# UNITED STATES OF AMERICA
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 06-50005-02 |
|---|---|
| VERSUS | CIVIL ACTION NO. 08-1434 |
| KEVIN LEE JOHNSON (02) | JUDGE S. MAURICE HICKS JR. |

## MEMORANDUM RULING

Before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Record Document 93) filed by *pro se* Petitioner Kevin Lee Johnson ("Johnson"). Johnson seeks an order from the Court vacating and setting aside his drug convictions based on the following grounds: (1) imposition of a procedurally and substantively unreasonable sentence; (2) misapplication of sentencing guidelines; and (3) ineffective assistance of counsel at the preliminary, trial, sentencing, and appellate stages. For the reasons below, Johnson's motion is **DENIED**.

## FACTUAL BACKGROUND

As a result of complaints of drug activity at 504 Joannes Street in Bossier City, Louisiana, law enforcement officers formulated a plan to contact the individuals selling drugs from that residence. See Trial Transcript at 11-13. On October 19, 2005, a confidential informant and Officer Trey Smith ("Officer Smith") of the Bossier City Police Department, who was acting in an undercover capacity, purchased an "eight ball" or 3.5 grams of crack cocaine from Kinsey whom the officer knew as "Craig" and "Greg" and who was confined to a wheelchair. Id. at 14–15, 45.

Officer Smith returned to the same house on October 22, 2005 and purchased 6.6 grams of crack cocaine from Kinsey. See id. at 17, 21. Kinsey weighed the drugs on a digital scale on the kitchen table, where other bags of drugs "packaged up for sale" were

also laying. Id. Officer Smith also noticed other people coming up to the house to buy drugs. See id. at 21, 45. On October 26, 2005, Officer Smith bought another 11 grams of crack cocaine from Kinsey out of a car in front of the same house. See id. at 22-24, 47.

Officer Smith again returned to the house on November 10, 2005, at which time he purchased 31 grams of crack cocaine, an amount significantly larger than purchased in the past. See id. at 25, 43, 50-51. According to Officer Smith, gradually increasing the amounts purchased is a "common technique" used during an investigation in order for the law enforcement officers to determine the organization of the individuals involved. Id. at 43.

When Officer Smith arrived at Joannes Street on the morning of November 10th, Kinsey could only sell him half an ounce and told him to return in the afternoon for the rest. See id. at 26-27, 32. Kinsey indicated that by the afternoon he would have obtained more powder cocaine to "cook" into crack. Id.

Officer Smith returned that afternoon and Johnson answered the door. See id. at 32-33, 41, 48. Johnson did not appear to know "Craig," but acknowledged knowing "Greg with the wheelchair" and directed Officer Smith to the back door. Id. This transaction was recorded. See id. at 37-40; Government's Trial Exhibits 22-23. As Officer Smith discussed the transaction with Kinsey, Johnson asked Officer Smith questions about his background. See Trial Transcript at 34, 42-43. "Based on his experience as a narcotics officer," Officer Smith interpreted these questions as an intent to determine if he and Johnson knew some of the same people and to "watch over the transaction." Id.

When Kinsey asked "Big Mike" to retrieve a scale, Johnson brought the scale to Kinsey who weighed out 29 grams in Johnson's presence. Id. at 34, 39-40. According to

Officer Smith, Johnson "watched over the transaction." Id. at 40, 49, 51. While other people were smoking marijuana in different parts of the house, only Kinsey and Johnson participated in the transaction. See id. at 39, 49, 51.

Officers executed a search warrant at the Joannes Street house after the November 10th evening transaction. See id. at 80, 82, 85; Government Trial Exhibit 6. During the execution of the search warrant, officers witnessed Johnson leaving the bathroom. See id. The officers then found some of the money[1] used by the officers to buy the drugs and on the bathroom floor. See id.

During the search, a gun and ammunition were found in the northwest bedroom of the house. See Trial Transcript at 103, 112; Government Trial Exhibits 9, 16. The following items were also found in the northwest bedroom: a car title which had been sent to Johnson at 504 Joannes Street, but which reflected an address of 1702 Malcolm Street; a letter postmarked October 17, 2006, addressed to Johnson at 504 Joannes Street; a cellular phone bill dated May 23, 2005, addressed to Johnson at 504 Joannes Street; and an accident report from the Shreveport Police Department dated February 27, 2005, which listed Johnson at 1702 Malcolm Street in Shreveport, Louisiana as the driver of one of the cars involved. See Trial Transcript at 105-106, 108-109; Government Trial Exhibits 10-13.

Michael Netter ("Netter") testified that he repaired Johnson's cars in the back yard of the Joannes Street house and had witnessed individuals buying drugs at that house. See Trial Transcript at 88-91. Netter testified that a few days before November 10th, he witnessed Johnson and another person exchange something. See id. at 92. Netter had

---

[1] The money which the officers used to purchase the drugs was copied before the purchases. See Trial Transcript at 28, 84.

known Johnson for approximately seven years and did not know him to have a "real job." Id. at 91.

Kinsey, who had pleaded guilty and had agreed to cooperate with the government, testified that he had known Johnson for approximately twenty years and that he and Johnson were involved in a conspiracy to distribute cocaine base for approximately one year. See id. at 53-60. He further testified that they were involved with "a lot more" than 50 grams of cocaine base. Id. at 62. He testified that when one of them did not have enough drugs, the other would provide the rest. See id. at 59-60.

Kinsey would convert powder cocaine into crack cocaine at the Joannes Street house and would give some of the crack to Johnson to sell. See id. at 60, 66. Kinsey had access to the Joannes Street house through Johnson and was under the impression that the house belonged to Johnson's brother. See id. at 68. Kinsey testified that Johnson was supposed to get half of the money from the November 10 transaction. See id. at 61.

## PROCEDURAL BACKGROUND

On January 6, 2006, a federal grand jury returned a six-count indictment against Kinsey and Johnson. See Record Document 1. Count One charged both of them with conspiracy to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base beginning sometime in 2003 and continuing through November 10, 2005, all in violation of 21 U.S.C. §§ 841(a)(1) and 846. See id. Counts Two through Five charged Kinsey with distributing cocaine base. See id. Count Six charged Kinsey and Johnson with distributing five grams or more of a mixture or substance containing a detectable amount of cocaine base on November 10, 2005, all in violation of 21 U.S.C. § 841(a)(1). See id.

Angela Waltman ("Waltman") was appointed to represent Johnson. On April 17, 2006, Johnson, through his attorney Waltman, filed a waiver of speedy trial. See Record Document 28. On May 4, 2006, Kinsey pleaded guilty. See Record Document 43. A minute entry issued on May 5, 2006, indicates that Johnson's trial was set for May 15, 2006. See Record Document 40.

On May 8, 2006, Waltman filed a motion to withdraw as attorney because of a conflict. See Record Document 44. The motion was granted and Pamela Smart ("Smart") was appointed to represent Johnson. See Record Document 45.

On August 8, 2006, after a two day jury trial, Johnson was found guilty by a jury as charged. See Record Documents 60, 62, 66. On October 10, 2006, the government filed an amended information of notice of prior narcotics convictions under 21 U.S.C. § 851(a)(1). See Record Document 73.

On December 4, 2006, Johnson was sentenced to a term of 360 months imprisonment as to each count to run concurrently. See Record Documents 77-78. At sentencing, Johnson was held responsible for over 1.5 kilograms of crack cocaine. See Sentencing Transcript at 9. The Court also found that the gun enhancement under U.S.S.G. 2D1.1(b)(1) was applicable. See id. at 13. The total offense level was 40. The Criminal History Category was V. The imprisonment range was 360 months to life.

On July 20, 2007, the United States Court of Appeals for the Fifth Circuit affirmed Johnson's conviction. See Record Document 86. On March 17, 2008, the United States Supreme Court denied Johnson's petition for writ of certiorari. See Government Exhibit A-Docket Sheet of United States Court of Appeals for the Fifth Circuit.

## LAW AND ANALYSIS

After conviction and exhaustion of a defendant's right to appeal, the Court is "entitled to presume that the defendant stands fairly and finally convicted." United States v. Shaid, 937 F.2d 228, 231-232 (5th Cir. 1991), quoting United States v. Frady, 456 U.S. 152, 164, 102 S.Ct. 1584, 1592 (1982). "Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post conviction collateral attacks. To the contrary, a final judgement commands respect." Frady, 456 U.S. at 164-165, 102 S.Ct. at 1593. Consequently, issues that can be presented in a motion filed under 28. U.S.C. § 2255 are limited. A defendant can challenge a final conviction only on issues of constitutional or jurisdictional magnitude. See Shaid, 937 F.2d at 232. As the Fifth Circuit has stated:

> Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted).

Even if a defendant has issues that are constitutional or jurisdictional in nature, he may be procedurally barred from raising them. In order to raise an issue for the first time on collateral review, a defendant must show both "cause" for his procedural default and "actual prejudice" resulting from the error. Frady, 456 U.S. at 168; United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994). To establish "cause," a defendant must show some external impediment prevented him from raising the claim on direct appeal. See United States v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). In order to meet the "actual prejudice"

test, he must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Shaid, 937 F.2d at 233.

A narrow exception to the cause and actual prejudice requirement exists in extraordinary cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 232. The Supreme Court has emphasized that this exception is limited to only those cases involving "manifest miscarriages of injustice" that would result in the continued incarceration of an innocent person. Id., citing Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667 (1986).

**1.     Imposition of an Unreasonable Sentence and Misapplication of the Sentencing Guidelines.**

Johnson's first two grounds for relief are in regard to his sentence. He first argues that the Court erred by imposing a sentence that was procedurally and substantively unreasonable. Next, he alleges that the Court erred by misapplying the United States Sentencing Guidelines. Due to the inherent overlap in these claims, these grounds are addressed simultaneously. The heart of his allegations are that the Court failed to consider United States v. Apprendi, 530 U.S. 466, 120 S.Ct. 2348 (2000); failed to properly apply the sentencing guidelines; failed to consider the disparity between sentences for powder cocaine and crack cocaine; failed to consider 18 U.S.C. § 3553(a) factors; failed to consider Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143 (1990); imposed a sentence greater than the statutory minimum solely because of decision to exercise right to a jury trial; and failed to properly justify the imposed sentence.

### a. Apprendi

Johnson alleges that the Court erred in failing to consider the holding of Apprendi, 530 U.S. 466, 120 S.Ct. 2348 (2000). He contends that the Court violated Apprendi in finding by basing its sentence on a drug amount not determined by the jury and by increasing his sentence beyond the applicable statutory maximum.

As held in Apprendi, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. at 2363 (emphasis added). In considering an Apprendi claim, if the indictment does not include a specific quantity of drugs and the jury does not expressly find a specific amount of drugs, the default provision in 21 U.S.C. § 841(b)(1)(C) is applicable. See Damper v. United States, No. 2:98-cr5-KS, 2006 WL 1966749, at *2 (S.D. Miss. July 11, 2006). However, if the indictment charges a specific drug amount, then the statute regarding that amount determines the maximum statutory sentence. See United States v. Lewis, 476 F.3d 369, 390-391 (5th Cir. 2007).

In Lewis, defendant Ford was charged and convicted of conspiracy to manufacture and distribute over fifty grams of methamphetamine or 500 grams of a substance or mixture containing methamphetamine, in violation of 21 U.S.C. § 846. See id. at 375. At sentencing, the district court enhanced Ford's sentence on the basis that he was responsible for between five and fifteen kilograms of a substance containing methamphetamine. See id. at 390-390. Relying upon Apprendi, Ford objected that this enhancement violated the Due Process Clause and his Sixth Amendment rights because it was based on facts not found by the jury. The Fifth Circuit held:

> Here, however, the district court's determination did not increase Ford's sentence beyond the statutory maximum. 21 U.S.C. § 841(b)(1)(A) provides for a sentence of ten years to life for defendants convicted of distributing more than fifty grams of methamphetamine or 500 grams of a substance containing methamphetamine. Ford's sentence of 325 months in prison was thus within the prescribed range of penalties for which Ford could be held responsible based solely on the jury's finding. Consequently, there is no <u>Apprendi</u> error.

Id. at 391.

In the case at hand, the indictment charged drug amounts, that is conspiracy to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base and distribution of 5 grams or more of a mixture or substance containing a detectable amount of cocaine base. <u>See</u> Record Document 1. Johnson was convicted of theses charges. <u>See</u> Record Document 66. Thus, the default provisions of Section 841 is inapplicable.

Additionally, the government filed an Amended Information and Notice of Prior Narcotics Conviction, pursuant to 21 U.S.C. § 851(a)(1). <u>See</u> Record Document 73. This prior conviction increased the statutory maximum sentence. Based upon the amounts of drugs set forth in the indictment, and for which the jury convicted Johnson, as well as his prior narcotics convictions, the statutory maximum sentence for Johnson was life imprisonment under 21 U.S.C. § 841(b). Further, defense counsel acknowledged that the minimum statutory sentence in this case was twenty years. <u>See</u> Sentencing Transcript at 14; Record Document 74. This acknowledgment implies that defense counsel recognized that the portion of 21 U.S.C. § 841(b) with a minimum sentence of twenty years and a maximum sentence of life imprisonment was applicable. Johnson was sentenced to 360 months imprisonment, which is less than the statutory maximum of life imprisonment. <u>See</u> Record Document 78. As a result, there was no <u>Apprendi</u> violation.

### b. Failure to Properly Apply the Sentencing Guidelines

Johnson alleges that the Court misapplied the United States Sentencing Guidelines. The alleged misapplications occurred when the Court enhanced the base offense level due to the presence of a gun and when the Court used a drug amount of 1.5 kilograms for the calculation of the sentence. In conjunction with these claims, Johnson contends that the record supports a mere buyer-seller relationship between himself and Kinsey.

In a Section 2255 motion, a petitioner may raise "only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." United States v. Williamson, 183 F.3d 458, 462 (5th Cir.1999); see also United States v. Larry, No. 08-50982, 2009 WL 506894, **1 (5th Cir. March 2, 2009). Johnson's allegations that the United States Sentencing Guidelines were misapplied are simply not cognizable in a § 2255 motion.

Additionally, Johnson's contention that the record only supported a buyer/seller relationship was refuted by the United States Court of Appeals for the Fifth Circuit in the the direct appeal. The Fifth Circuit stated:

> The evidence established that Johnson conspired with Clinton Kinsey to distribute crack cocaine to an undercover police officer with the Bossier City Police Department. The evidence proved Johnson's knowledge of the offenses, his intent to participate in the conspiracy, and that Johnson committed acts in furtherance of the conspiracy. The evidence further proved that Johnson distributed crack cocaine. Therefore, Johnson's insufficiency-of-the-evidence claim is unavailing.

Record Document 86 at 2.

### c. Disparity Between Sentences for Powder Cocaine and Crack Cocaine

Johnson alleges that the Court erred in failing to consider the disparity between

sentences for powder cocaine and crack cocaine. Allegations of an unconstitutional sentence due to the disparity should be addressed on direct appeal unless cause and prejudice are shown. Claims of ineffective counsel due to failure to raise such claims on direct appeal or claims of innocence of the crime of conviction may provide the basis for 'cause' for Johnson's failure to raise the disparity between crack cocaine and powder cocaine on direct appeal. See United States v. Mosley, No. 04–50159, No. 08–40, 2011 WL 1188554, at *4 (W.D. La. March 28, 2011). While Johnson does not maintain innocence of the convicted crime, he does allege that his counsel was ineffective for failing to raise the disparity issue on direct appeal. Therefore, this claim will be addressed *infra* at Section 2e of the instant ruling.

### d. Failure to Consider to 18 U.S.C. § 3553(a) Factors, Failure to Consider Taylor, and Imposition of a Sentence Greater than the Statutory Minimum

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." United States v. Salazar, No. H-07-398-1, 2010 WL 599181, *1 (S.D. Tex. Feb. 17, 2010); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594 (1972); Bledsue v. Johnson, 188 F.3d 250, 255 (5th Cir.1999). "Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them." Salazar, 2010 WL 599181, *1. Notwithstanding, a *pro se* petition must include sufficient facts to support its claims. See id. Mere conclusory allegations will not suffice to raise a constitutional issue. See id. Without sufficient evidence in the record, bald assertions in a *pro se* habeas corpus petition are not considered to be of probative evidentiary value. See id. The Fifth Circuit has noted:

Furthermore, bare, conclusory allegations unsupported by other indicia of

reliability in the record, do not compel a federal district court to hold an evidentiary hearing. Thus, a district court does not commit error when it disposes of a habeas petitioner's claims without holding a full-fledged evidentiary hearing when those claims are unmeritorious, conclusory, and wholly unsupported by the record. It must be remembered, that the foremost function of the Great Writ is to grant relief from unlawful imprisonment or custody.

Ross v. Estelle, 694 F.2d 1008, 1012 n. 2 (5th Cir. 1983) (citation and quotations omitted).

First, Johnson makes the conclusory allegation that the Court failed to consider the Section 3553(a) factors. Johnson seems to focus on certain statements made by the undersigned at sentencing:

> I do have available Section 3553(a) on statutory factors but I'm really not seeing that in this particular set of circumstances, that his sentence should be lessened because of the "so-called statutory factors," [sic] It seems to me that in looking at the nature of the offense, which is a substantial drug distribution program, that the guidelines, "I [sic] think, are accurate and properly account for the kinds of Issues that are present that you pointed out in your client's background.

Sentencing Transcript at 16. However, Johnson fails to note that the Court also stated that "[t]he sentence was selected by the Court after due consideration of the provisions of Section 3553(A) of Title 18 of the United States Code, as well as the defendant's criminal history, his particular personal background and characteristics as well as the instant offense." Id. at 18. The sentencing transcript, when considered as whole, indicates that the Court considered the Section 3553(a), but in the end concluded that the factors did not warrant a downward departure in this case. Thus, Johnson's conclusory allegation is simply unsupported by the record.

Second, Johnson appears to argue that the Court failed to follow the categorical approach described in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143 (1990), for sentencing enhancements. In United States v. Gonzalez-Terrazas, 529 F.3d 293 (5th Cir.

2008), the Fifth Circuit recognized the categorical approach, stating:

> This court uses a categorical approach to determine whether an offense qualifies as an enumerated offense for sentence enhancement purposes . . . . Using this approach, a district court looks to the elements of a prior offense, rather than to the facts underlying the conviction, when classifying a prior offense for sentence enhancement purposes.

Id. at 297. Without referring to any specific facts, Johnson simply argues that the Court failed to take the categorical approach. See Record Document 93-1 at 7. This is precisely the type of conclusory allegation and bald assertion that will not suffice to raise a constitutional issue.

Third, Johnson alleges that the Court erred in sentencing him for a period greater than the statutory minimum simply because he exercised his right to a jury trial. In support of this allegation, Johnson refers to a statement made by the Court at sentencing:

> I have reviewed this matter in some detail. The issue that really confronts the Court is one having to with the decision to proceed to trial and running some of the risks that are inherent in that, meaning a guilty verdict by the jury.

Sentencing Transcript at 15. The Court went on to state:

> In this particular instance, the guidelines have a calculated range of 360 months to life, and the issue here really has to do with the level of his involvement in the drug trade and whether the guidelines have correctly taken into account considerations that are appropriate to Mr. Johnson's case.
>
> I do have available Section 3553(A) on statutory factors, but I'm really not seeing that in this particular set of circumstances that his sentence should be lessened because of the so-called statutory factors. It seems to me that looking at the nature of the offense, which is a substantial drug distribution program, that the guidelines, I think are accurate and properly account for the kinds of issues that are present that you pointed out in your client's background.

Id. at 15-16. Based upon these statements, the record reveals that the Court did not sentence Johnson for a period greater than a statutory minimum solely because he exercised his right to a jury trial. Rather, it took many factors into consideration to

determine his sentence. In light of this transcript, Johnson simply has not pointed to sufficient facts to support his allegation.

### e. Failure to Properly Justify Sentence

Finally, Johnson maintains that the Court failed to properly justify the sentence. It appears that this claim is not cognizable under Section 2255; however, even if considered, Johnson's claim that the Court did not justify the sentence lack merit. In <u>Rita v. United States</u>, 551 U.S. 338, 127 S.Ct. 2456 (2007), the Supreme Court stated:

> The statute does call for the judge to state his reasons. And that requirement reflects sound judicial practice. Judicial decisions are reasoned decisions. . . . A public statement of those reasons helps provide the public with the assurance that creates that trust.
>
> That said, we cannot read the statute (or our precedent) as insisting upon a full opinion in every case. The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word granted, or denied on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.
>
> ...
>
> The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority. Nonetheless, when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation.
>
> Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence generally under § 3553(a)-that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way-or argues for departure, the judge normally need say no more.

Rita, 551 U.S. at 356-357, 127 S.Ct. at 2468 (citations and quotations omitted).

Here, the Court was expressive in its reasoning for Johnson's sentence and stated its reasons on the record:

> [I]n this instance, the U.S. Sentencing Guidelines, having been held as correctly calculated under your set of circumstances, I believe take into account your background and particular characteristics so that the recommended range of the sentence, which is at a low of 360 months, I believe in this instance is correct. . . . The sentence was selected by the Court after due consideration of Section 3553(A) of Title 18 of the United States Code, as well as the defendant's criminal history, his particular personal background and characteristics, as well as his involvement in the instant offense.

Sentencing Transcript at 17-18. The transcript also evidences that the Court considered the defense counsel's arguments. Accordingly, the statements made by the Court were sufficient to justify Johnson's sentence.

**2. Ineffective Assistance of Counsel.**

The general rule prohibiting a defendant from raising claims on collateral review absent "cause" and "actual prejudice" does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693 (2003). This "procedural-default rule is neither a statutory nor constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id. at 503. Requiring a criminal defendant to bring claims of ineffective assistance of counsel on a direct appeal does not promote these objectives. See id. A claim of ineffective assistance of counsel cannot be properly resolved on appeal because there has been no opportunity to develop the record on the merits of these allegations. See United States v. Alanis, 88 Fed. Appx.15, 19 (5th Cir. 2004). Thus, a criminal defendant is permitted to bring ineffective assistance of counsel

claims in a collateral proceeding under Section 2255, regardless of whether such claims could have been raised on direct appeal. See id.

To prevail on claims of ineffective assistance of counsel, Johnson must prove (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under the first prong of Strickland, Johnson must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064. The court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066.

Under the second prong of Strickland, Johnson must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability to undermine confidence in the outcome." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. Johnson must demonstrate that the attorney's actions "were so serious as to render the proceeding unreliable and fundamentally unfair." United States v. Saenz-Forero, 27 F.3d 1016, 1021 (5th Cir. 1994). If Johnson fails to establish either prong of the Strickland test, his claim of ineffective assistance of counsel must be denied. See Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir. 1997).

Johnson alleges ineffective assistance of counsel at the preliminary, trial, and

sentencing stages. This includes waiver of the right to a speedy trial, failure to properly investigate and develop an adequate defense, and failure to request jury instruction on a specific drug quantity and on the buyer-seller relationship. He also argues ineffective assistance of counsel at the appellate stage, namely that his counsel failed to raise the disparity issue on direct appeal.

### a. Waiver of Speedy Trial

Johnson argues that his counsel, Smart, waived his right to a speedy trial for a continuance and, as a result, the government was given time to coerce Kinsey to shift responsibility. The record reflects that on April 17, 2006, Johnson signed a waiver of speedy trial rights under the guidance of his original counsel, Waltman. She later filed a motion to withdraw, which was granted on May 9, 2006. At the same time, Smart was appointed as substitute counsel, the Scheduling Order was vacated, and the trial, which was set for May 15, 2006, was continued. Smart did not file a motion, take any action to seek a continuance, and/or waive Johnson's right to a speedy trial. It is unreasonable to hold counsel accountable for actions taken by the Court *sua sponte*. Thus, this claim lacks merit.

### b. Failure to Properly Investigate and Prepare Defense Prior to Trial

With nothing more than a reference to the speedy trial waiver and noting that Kinsey agreed to cooperate with the government, Johnson alleges that his counsel did not properly investigate his case and/or did not adequately prepare a defense prior to trial. See Record Document 93-1 at 12-13. While Johnson is *pro se*, he is still required to include sufficient facts to support his allegations. See Salazar, 2010 WL 599181, *1. Johnson's bald assertions are of no probative evidentiary value and do no support his ineffective

assistance of counsel claim.  See id.

### c. Jury Instructions

Johnson claims that his counsel was ineffective in failing to request jury instructions involving a specific amount of drugs for sentencing purposes.  Fifth Circuit precedent is clear that counsel need not raise meritless points.  See United States v. Fields, 565 F.3d 290, 296 (5th Cir. 2009).  As discussed previously in the instant ruling, Apprendi does not require that the quantity of drugs used in sentencing be found by the jury when the sentence does not exceed the statutory maximum.  Here, Johnson's sentence was less than the statutory maximum.  Thus, counsel was not ineffective in failing to request jury instructions involving a specific quantity of drugs for sentencing purposes.

Johnson further asserts that counsel was ineffective for failing to request jury instructions pertaining to the defense that there was only a buyer/seller relationship.  In United States v. Maseratti, 1 F.3d 330 (5th Cir. 1993), the Fifth Circuit held that buyer/seller relationship jury instructions were not necessary or required in a drug conspiracy case because the jury instructions encompassing the definition and elements of conspiracy cover the relevant law concerning buyer/seller relationships.  See id. at 336.  If the evidence showed that a defendant is merely a buyer or seller, the elements necessary to prove a conspiracy would be lacking, and a not guilty verdict would result.  See id.  If jury instructions accurately reflect the law on conspiracy, then the buyer-seller relationship has been adequately covered by the conspiracy instruction.  See id.

In our case, the pattern jury instruction on conspiracy accurately reflected the law and separate jury instructions relating to the buyer/seller relationship were not necessary. Thus, counsel was not ineffective for failing to request separate jury instructions and

Johnson's claim fails.

### d. Failure to Raise Disparity Issue on Appeal

Finally, Johnson argues that counsel was ineffective for failing to raise the disparity in sentencing between crack cocaine and powder cocaine a claim on direct appeal. In November 2007, Amendment 706 to the Guidelines became effective. This amendment reduced the base offense levels applicable to certain crack cocaine offenses by two levels. In December 2007, the Supreme Court decided Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558 (2007), wherein the Court held:

> We hold that, under Booker, the cocaine Guidelines, like all other Guidelines, are advisory only . . . . A district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is "greater than necessary" to serve the objectives of sentencing. 18 U.S.C. § 3553(a) (2000 ed. and Supp. V). In making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses.

Id. at 91, 128 S.Ct. at 564. One day after Kimbrough was decided, the Sentencing Commission voted to make Amendment 706 retroactive, effective March 3, 2008.

The Fifth Circuit affirmed Johnson's conviction on August 13, 2007. See Record Document 86. The reasonableness of an attorney's actions under Strickland is determined by examining the law and events at the time of the counsel's actions. See Ogan v. Cockrell, 297 F.3d 349, 360 (5th Cir. 2002) ("The determination whether the performance of counsel was deficient is based upon the law as it existed at the time of trial."); see also Lucas v. Johnson, 132 F.3d 1069, 1078-1079 (5th Cir. 1998) ("Counsel is not required to anticipate subsequent developments in the law."). Thus, at the time of Johnson's direct appeal, Kimbrough had not yet been decided and Johnson's counsel was not ineffective

for failing to raise the issue of the crack/powder disparity on direct appeal.

## CONCLUSION

The Court finds that Johnson has not established that his sentence was unreasonable; that the sentencing guidelines were misapplied; or that his counsel was ineffective at the preliminary, trial, sentencing, or appellate stages. Accordingly, his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Record Document 93) is **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing 2255 proceedings for the United States District Courts, this Court must issue or deny a Certificate of Appealability when it enters a final order adverse to the applicant. "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a) Rule Governing Section 2255 Proceedings for the United States District Courts. Unless a Circuit Justice or District Judge issues a Certificate of Appealability, an appeal may not be taken to the court of appeals.

In this instance, a Certificate of Appealability is **DENIED** because Johnson has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 22nd day of September, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE